UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SMARTEK21, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>VISIKARD, INC,<br><br>    Defendant/Third-Party<br>    Plaintiff,<br><br>CHRISTOPHER MASON and<br>SMYTH & MASON, PLLC<br><br>    Third-Party Defendants. | C17-1798 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on Third-Party Defendants Christopher Mason and Smyth & Mason, PLLC's (together, "Mason") Rule 11 Motion and Motion for Summary Judgment, docket nos. 21 and 48. Having reviewed all papers filed in support of, and in opposition to, the motions, the Court enters the following order.

**<u>Background</u>**

This dispute arises out of a business deal between SmartBotHub, LLC ("SmartBotHub") and VisiKard, Inc. ("VisiKard"). In October 2016, SmartBotHub and VisiKard signed a Letter of Intent. Declaration of Christopher Mason, docket no. 19,

ORDER - 1

("Mason Dec."), Ex. 1 at 1-4. During the drafting and execution of the Letter of Intent, SmartBotHub was advised by Mason. The Letter of Intent memorialized an agreement between the parties to "work together with the goal of creating a Travel BOT" and to "explore" the use of one of VisiKard's corporate entities to bring the Travel BOT to market. *Id.*, Ex. 1 at 2. The Letter also expressly noted that "no joint venture, partnership or other legal relationship shall occur by virtue of conduct between the Parties" and that the "proposed transactions subject to this letter of intent are subject to further due diligence investigation . . . ." *Id.*, Ex. 1 at 1. After the execution of the Letter, a different LLC under common ownership with SmartBotHub, SmarTek21, loaned VisiKard $130,000, memorialized in three promissory notes. *Id.*, Ex. 1 at 5-7.

Mason claims to have first interacted with VisiKard after the loans when due diligence began. *Id.* at 8. SmarTek21's principal, Al Lalji, introduced Mason to VisiKard's principal, Ken Lipscomb, by email on December 13, 2016. In that email, Lalji wrote that Mason would draft a "legal agreement between the companies for your final approval." *Id.* at 20.[1] Mason then conducted due diligence on VisiKard. *Id.* at 8-20, 22-23. That due diligence included adversarial communications such as the following:

- "It is crystal clear that . . . before we could participate in VK Travel, significant items of due diligence remain that need to be fully addressed

---

[1] VisiKard alleges that it was in contact with Mason prior to this date, but offers no details about that contact, let alone details that would suggest the existence of an attorney-client relationship between VisiKard and Mason. *See* VisiKard's Disputed Facts, Docket No. 23-1, Fact Nos. 3, 9.

and assessed first.  Because of their importance, my initial focus is obtaining complete responses from you and potentially the remaining members, not proceeding first with drafting.  We are simply not there yet." *Id.* at 8.

- "Andy has been told that there are simply no books and records for VK Travel, LLC . . . I can't take 'no records' at face value.  Are you saying VK Travel has no bookkeeping, accounting, formation, expense and membership records at all?  If so that is quite concerning." *Id.* at 18.

- "Respectfully, Ken, I am unsatisfied and actually quite concerned with your responses to very basic due diligence requests.  Bear in mind that you are asking us to accept the premise that we should go into business as members in an LLC with VisiKard." *Id.* at 22.

- "What has happened in fact is that basic due diligence questions have been fully or largely ignored by you to date. . . . We are not going to get far unless you exhibit full transparency and start providing detailed substantive responses and records very soon." *Id.* at 22-23.

As a result of the due diligence, SmartBotHub declined to work through VK Travel, LLC or merge with VisiKard.  *Id.* at 8-18; 22-25.

The parties then explored a different idea of licensing VisiKard's technology to SmartBotHub. In furtherance of that goal, SmartBotHub's outside intellectual property counsel prepared new agreements.  *Id.* at 26.  When Mason shared them with VisiKard, he advised that he was not acting as VisiKard's counsel.  *Id.* ("Given that VisiKard is

currently unrepresented by counsel, out of an excess of caution I am also reiterating that we solely represent SmarTek Product Holdings and its subsidiaries and affiliates and that such agreement will be provided on behalf of SmartBotHub, LLC to VisiKard on licensing terms. No drafting we may provide is produced on VisiKard's or your behalf."). Lipscomb replied with thanks for the "points of clarification." *Id.* Mason reiterated these points in later emails: "These documents are all prepared solely in our capacity as counsel for SmartBotHub and its parents and affiliates. We and our co-counsel do not represent VisiKard or you." *Id.* at 27. After further disagreements, SmartBotHub abandoned its efforts to do business with VisiKard. *Id.* at 28-29.

Mason then secured and sought to enforce the promissory notes memorializing the loans from SmarTek21 to VisiKard. *Id.* at 28-29. Mason continued to negotiate possible repayment by VisiKard for several months before VisiKard defaulted on a modified repayment plan and SmarTek directed Mason to initiate this lawsuit. *Id.* at 28-56; Docket No. 1.

VisiKard filed a Third-Party Complaint ("Complaint") against Mr. Mason, alleging legal malpractice. VisiKard Answer and Third-Party Complaint ("Third-Party Complaint"), Docket No. 8. The Complaint focuses on Mason's conduct as an attorney for SmarTek21 during negotiations with VisiKard and alleges that VisiKard "became non-client beneficiaries of Third Party Defendants' legal representation." *Id.* ¶ 3. VisiKard claims the parties entered into a joint venture and that "Mason handled the business in drafting contracts related to this joint venture throughout every step." *Id.* ¶ 8. VisiKard also asserts that "SmarTek stated that VisiKard may use their attorney Mason

as his attorney as well." *Id.* ¶9. To that end, VisiKard claims that it "received legal advice from Mason regarding contracts entered into between SmarTek and VisiKard and other matters to put forth the joint venture." *Id.* ¶ 11. VisiKard also argues that Lipscomb believed the interactions were not adversarial and were in fact "very helpful," "very cordial," and involved Mason offering "suggestions" and "options" to Lipscomb as a way to "make business work" between the two companies. Plf.'s Response re Rule 11 Motion, Docket No. 22 at 3. Without elaboration or citation to record evidence, VisiKard claims that it "did not understand" certain agreements and "only signed [them] based on Mason's advice that the terms were simply 'boilerplate.'" Answer ¶ 15. After signing these agreements, VisiKard alleges that Mason "turned on VisiKard" and began enforcing the agreements in ways detrimental to VisiKard. *Id.* ¶ 16. According to Lipscomb, VisiKard believed that because it was in negotiations to be a part of the SmartBotHub company, any work that Mason did on SmartBotHub's behalf was going to be in the best interest of VisiKard too. VisiKard Disputed Fact 14, Docket No. 23-1. At the same time, VisiKard maintains that it would not turn over certain intellectual property to Mason "because that would essentially expose the intellectual property rights to VisiKard's technology." Third-Party Complaint, ¶ 14; VisiKard Disputed Fact 15-16 ("Smartek21/Mason's insistence on the VisiKard Source Code prior to having a final fully binding deal with SmartBotHub was untenable because it failed to protect VisiKard"). Finally, VisiKard, via Lipscomb, also theorizes that Mason may have been the attorney responsible for preparing or modifying the promissory notes between SmarTek and VisiKard, but does not explain how this fact, if true, would be evidence of

ORDER - 5

anything more than Mason acting as SmarTek's attorney. VisiKard Disputed Fact 5, Docket No. 23-1.

**Discussion**

    **I.     Mason's Motion for Summary Judgment**

         **a.     Summary Judgment Standard**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Alternatively, a movant must show that the plaintiff lacks competent evidence to support an essential element of his or her claim. *Id.* at 322; *Luttrell v. Novartis Pharms. Corp.*, 894 F. Supp. 2d 1324, 1340 (E.D. Wash. 2012). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present "affirmative evidence," which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. *Id.* at 255, 257. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Celotex*, 477 U.S. at 322 (Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

### b. Strong Evidence That Mason Owed No Duty to VisiKard

Under Washington law, a legal malpractice claim requires the plaintiff to prove (1) the existence of an attorney-client relationship giving rise to a duty of care; (2) an act or omission by the attorney constituting breach of that duty of care; (3) damage to the client; and (4) that the attorney's breach proximately caused the damage. *Hizey v. Carpenter*, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992). Attorneys negotiating a contract that would benefit all parties to a transaction do not automatically enter into attorney-client relationships with all parties in the transaction. *Bohn v. Cody*, 119 Wn.2d 357, 364, 832 P.2d 71 (1992) ("An attorney/client relationship is not created, however, merely because an attorney discusses the subject matter of a transaction with a nonclient . . . . [And] an attorney for one party to a transaction does not become the other party's attorney merely because he prepared the documents formalizing the transaction.") (internal citation omitted); *Trask v. Butler*, 123 Wn.2d 835, 844, 872 P.2d 1080 (1994) ("The policy considerations against finding a duty to a nonclient are the strongest where doing so would detract from the attorney's ethical obligations to the client. This occurs where a duty to a nonclient creates a risk of divided loyalties because of a conflicting interest or a breach of confidence.") (internal citation omitted).

It is undisputed that Mason repeatedly clarified the fact that he represented SmarTek21 and not VisiKard because he knew VisiKard was not being represented by counsel. Mason Dec. at 26-27. VisiKard devotes substantial briefing to the multifactor test established in *Trask v. Butler* for determining the existence of a duty from a lawyer to a non-client. 123 Wn.2d 835 (1994). But *Trask* itself notes that "the beneficiary test

does not apply in an adversarial context." *Trask*, 123 Wn.2d at 844. Even assuming the *Trask* factors were applicable here, they all point away from a finding of any duty. Even viewing the facts in the light most favorable to VisiKard, as this Court must do, it is clear that at best, the issue of whether Mason and VisiKard entered into an attorney-client relationship is complicated.

        **c.     VisiKard's Failure to Offer Expert Testimony Regarding the Duty of Care**

Expert testimony is generally required to prove a violation of the standard of care in legal malpractice claims, unless the specific negligence alleged "is within the common knowledge of lay persons." *Walker v. Bangs*, 92 Wn.2d 854, 858, 601 P.2d 1279 (1979). "The plaintiff must submit evidence that no reasonable Washington attorney would have made the same decision as the defendant attorney." *Clark Cty. Fire Dist. No. 5 v. Bullivant Houser Bailey P.C.*, 180 Wn. App. 689, 706, 324 P.3d 743 (2014). Legal issues, however, may be decided by a judge and do not require expert testimony. *Slack v. Luke*, 192 Wn. App. 909, 918-19, 370 P.3d 49 (2016) (holding expert testimony not required to prove the adequacy of underlying claim in malpractice action).

Here, given the mixed issues of law and fact raised by VisiKard's malpractice action—and particularly given the strength of the evidence indicating no attorney-client relationship was formed between Mason and VisiKard—expert testimony will be required regarding the relationship, the standard of care, whether Mason breached any duty, and whether Mason's actions proximately caused any damage to VisiKard.

1   VisiKard argues that the negligence alleged in its Third-Party Complaint is within
2   the common knowledge of lay persons and an expert is not required. Docket No. 55 at 5.
3   Although VisiKard is correct that the presence of an attorney-client relationship is a
4   function of the parties' subjective beliefs, VisiKard ignores the requirement that that
5   belief must be objectively reasonable. *Bohn*, 119 Wn.2d at 363. And VisiKard also fails
6   to engage with the main thrust of Mason's argument that expert testimony will be
7   required to prove (1) whether the facts alleged created an attorney-client relationship,
8   (2) whether Mason's conduct breached a duty, and (3) whether that breach proximately
9   caused damages to VisiKard. *See Geer v. Tonnon*, 137 Wn. App. 838, 851, 155 P.3d 163
10  (2007) (holding that expert testimony was required to prove the standard of care and "to
11  demonstrate that such a breach of [the lawyer's] duty of care was the cause in fact of
12  [plaintiff's] claimed damages"); *State v. Stumpf*, 64 Wn. App. 522, 526-27, 827 P.2d 294
13  (1992) ("[W]e rely on the general rule that expert testimony is required when an essential
14  element in a case is best established by opinion but the subject matter is beyond the
15  expertise of a lay witness.") (internal quotation marks and citations omitted); *Walker*,
16  92 Wn.2d at 857-58 (holding that malpractice allegations involving trial tactics and
17  procedures and maritime law required expert testimony). This dispute does not involve
18  attorney behavior that falls within the common knowledge of jurors.
19      VisiKard was on notice for several months of its obligation to disclose experts and
20  expert reports by July 23, 2018. Docket No. 16. Yet VisiKard failed to disclose any
21  expert regarding the applicable standard of care, and to this day has not indicated any
22
23

intent to disclose such an expert.[2] That failure is yet another ground to grant Mason's motion for summary judgment.

## II. Mason's Rule 11 Motion

### a. Standard Under Rule 11

Rule 11 of the Federal Rules of Civil Procedure require that an attorney's written representations be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and that any "factual contentions [must] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11. Sanctions are permissible whenever an attorney or party violates the rule.

### b. The Purpose and Basis of the Third-Party Complaint

VisiKard's third-party claim for legal malpractice against Mason lacks merit, but it does not appear to have been brought for an improper purpose or without any reasonable basis in law or fact. To be sure, VisiKard's malpractice claim is dangerously close to

---

[2] VisiKard's response to the Motion for Summary Judgment makes vague references to new Defendant Kenneth Lipscomb, and the possibility that he may wish to assert a claim for malpractice and disclose experts in support of that claim. Docket No. 55 at 2-3. That is true, but beside the point. At issue is *VisiKard's* Third-Party Complaint and *VisiKard's* failure to present any triable issues regarding the malpractice claim. VisiKard cannot avoid summary judgment with speculation and innuendo about what other parties might do. *Slack*, 192 Wn. App. at 916 ("A party may not rely on speculation or having its own affidavits accepted at face value."). VisiKard has not argued that it needs more time to gather facts essential to its opposition to the summary judgment motion or what evidence would be established by further discovery, so a continuance under Federal Rule of Civil Procedure 56(f) is not warranted. *Butler v. Joy*, 116 Wn. App. 291, 299, 65 P.3d 671 (2003). VisiKard's suggestion that it has not had the benefit of discovery against Mason is disingenuous. Mason's entire client file has been in VisiKard's possession since April 9, 2018, and as of the noting date of the instant motions VisiKard had not served any discovery requests on Mason. Docket No. 19, Ex. 1; Docket No. 60 at 2.

sanction territory, but it is not impossible that VisiKard's counsel thought her client's subjective belief—although unreasonable—was enough to give rise to a factual dispute about the existence of an attorney client relationship. *See Bohn*, 119 Wn.2d at 363 ("The existence of the relationship 'turns largely on the client's subjective belief that it exists.' The client's subjective belief, however, does not control the issue unless it is reasonably formed based on the attending circumstances, including the attorney's words or actions.") (internal citation omitted).

That VisiKard and counsel had access to the entire record—which Mason accurately describes as solely emails and attachments between Mason and VisiKard—for several months before filing the Third-Party Complaint is very concerning to the Court. VisiKard was undoubtedly aware of the emails and communications that make it objectively unreasonable to believe Mason represented VisiKard or owed it duties as a third-party beneficiary. But it is also possible that VisiKard's counsel simply misunderstood the law that required her client's subjective beliefs to be objectively reasonable.

Mason also theorizes that counsel for VisiKard brought the malpractice claims in order to "delay a note collection action and deprive a part of its counsel." Mason Reply re Rule 11 Motion, Docket No. 26 at 1. Yet Mason offers no evidence indicating an improper purpose, other than the general weakness of VisiKard's claim. The Court is not convinced by Mason's argument that Lipscomb and VisiKard are such sophisticated business actors that they necessarily understand the meritlessness of their current legal position. Mason Rule 11 Motion, Docket No. 21 at 18-19. Rather, the record reflects,

that although VisiKard and Lipscomb were sophisticated in certain regards, they were disorganized and unsophisticated in others. Mason has not carried its burden of proving the Third-Party Complaint was brought for an improper purpose or that counsel failed to perform an adequate investigation prior to filing.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Third-Party Defendants' Rule 11 Motion, docket no. 21, is DENIED.

(2) Third-Party Defendants' Motion for Summary Judgment, docket no. 48, is GRANTED, and Third-Party Plaintiff VisiKard, Inc.'s Third-Party Complaint is DISMISSED. Because no claims remain against Mason and Smyth & Mason PLLC, they are dismissed from this case.

(3) The Clerk is directed to enter judgment in favor of Third-Party Defendants as against Third-Party Plaintiff, and to send a copy of this Order to all counsel of record.

(4) This Order shall have no effect on the remaining claims brought by Plaintiff SmarTek21, LLC against Defendant VisiKard, Inc. or on claims or defenses that may be raised by Kenneth Lipscomb.

IT IS SO ORDERED.

Dated this 16th day of October, 2018.

Thomas S. Zilly
United States District Judge